1     IN THE UNITED STATES DISTRICT COURT
     FOR THE MIDDLE DISTRICT OF TENNESSEE
2        NASHVILLE DIVISION

3

  UNITED STATES OF AMERICA,    )
4                  )
       Plaintiff,    )
5                  )
       v.        )  No. 3:07-CR-00159
6                  )
  JAMES C. McWHORTER, BEATRICE L.  )
7  McWHORTER, ANTHONY W. KENNEDY,  )
  CHAD E. VINCENT, CHASTITY A.   )
8  LEONARD, RONNIE MACK HAMPTON,   )
  ROGER T. RAPP, DAVE MAYO, JR.,   )
9  and SHAWN L. SIMPSON,      )
                  )
10       Defendants.    )
                  )
11  _____)

12

13  ------------------------------------------------------------

14   BEFORE THE HONORABLE ROBERT L. ECHOLS, SENIOR JUDGE
        TRANSCRIPT OF PROCEEDINGS
15          May 12, 2008

16  ------------------------------------------------------------

17

18        **EXCERPT OF PROCEEDINGS**

19

20

21

22

23  PREPARED BY:  DOROTHY STILES, RMR, CRR
           Official Court Reporter
24          801 Broadway - Room A-837
           Nashville, Tennessee 37203
25          615.330.1764

```
1      APPEARANCES:

2      For the Plaintiff:        COURTNEY D. TROMBLY
                                 Assistant United States Attorney
3                                110 Ninth Avenue South
                                 Suite A-961
4                                Nashville, Tennessee 37203

5


6      For the Defendant,        JERRY GONZALEZ
       BEATRICE L. McWHORTER:    Jerry Gonzalez, P.C.
7                                2441-Q Old Fort Parkway
                                 Box 381
8                                Murfreesboro, TN 37128

9


10     For the Defendant,        MICHAEL JOSEPH FLANAGAN
       ANTHONY W. KENNEDY:       Attorney at Law
11                               Cavalier Building
                                 95 White Bridge Road
12                               Suite 208
                                 Nashville, Tennessee 37205
13

14
       For the Defendant,        BOB LYNCH, JR.
15     CHAD E. VINCENT:          Attorney at Law
                                 222 Second Avenue, N
16                               Suite 316
                                 Nashville, Tennessee 37201
17

18
       For the Defendant,        JOHN EDWARD RODGERS, JR.
19     CHASTITY A. LEONARD:      Attorney at Law
                                 500 Harpeth Trace Drive
20                               Nashville, Tennessee 37221

21

22     For the Defendant,        PAUL J. BRUNO
       RONNIE MACK HAMPTON:      Law Office of Paul J. Bruno
23                               Bank of America Plaza
                                 414 Union Street
24                               Suite 904
                                 Nashville, Tennessee 37219
25
```

```
1      For the Defendant,        JAMES A. SIMMONS
       ROGER T. RAPP:            Attorney at Law
2                                Hazel Path Mansion
                                 105 Hazel Path
3                                Hendersonville, TN 37075

4

5      For the Defendant,        JUDE THADDEUS LENAHAN
       DAVE MAYO, JR.:           Federal Public Defender's Office
6                                810 Broadway
                                 Suite 200
7                                Nashville, Tennessee 37203

8

9      For the Defendant,        KATHLEEN G. MORRIS
       SHAWN L. SIMPSON:         Attorney at Law
10                               42 Rutledge Street
                                 Nashville, Tennessee 37210
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    The above-styled cause came on to be heard

2  on May 12, 2008, at 1:15 p.m., before the Honorable

3  Robert L. Echols, Senior Judge, when the following

4  proceedings were had, to-wit:

5                    **EXCERPT OF PROCEEDINGS**

6        THE COURT:  Be seated, please.

7    The next case today involves several defendants who are

8  in the courtroom this morning -- this afternoon, rather, for

9  a guilty plea hearing.

10   The style of the case is United States of America vs.

11 James C. McWhorter, who is not here.  He is the co-defendant,

12 but his case has been continued.

13   Secondly, there is Beatrice L. McWhorter, Anthony W.

14 Kennedy, Chad E. Vincent, Chastity Leonard, Ronnie Mack

15 Hampton, Roger T. Rapp, Dave Mayo, Jr., and Shawn Simpson.

16   Each of them are represented by their attorneys as

17 follows:  Beatrice McWhorter is represented by Jerry

18 Gonzalez.  Defendant Kennedy is represented by Mike Flanagan.

19 Chad Vincent is represented by Bob Lynch.  Chastity Leonard

20 by John Rodgers.  Ronnie Mack Hampton by Paul Bruno.  Roger

21 Rapp by Jim Simmons.  Dave Mayo by Jude Lenahan.  And Shawn

22 Simpson by Kathleen Morris.

23   Each of these defendants has submitted to the Court a

24 proposed *Petition to Enter a Guilty Plea*, as well as a

25 written *Plea Agreement*.  I have reviewed those documents

1    before this hearing and we'll talk about those a little

2    later.  Addressing --

3        First, I should say that the Government is represented

4    by Ms. Courtney Trombly from the United States Attorney's

5    office.

6        I'm sure all the defendants have spoken with their

7    attorneys about this proceeding today.  It consists of a

8    number of questions that I must ask to each of you.  And it

9    will take some time to go through that, because each of you

10    must answer individually the questions asked of you.

11        Although by asking all of you being here, the questions

12    will be the same in many cases but will still require your

13    individual answers to those questions.  I'll help you along

14    as we go through it, and I think you'll understand that

15    process pretty quickly.

16        Before we begin, I would like for the courtroom deputy

17    to administer the oath.  I'll ask each of the defendants to

18    now rise and raise your right hand.

19                               (Oath administered.)

20        THE COURT:  Be seated, please.

21        All of you should understand that now you've been sworn

22    to tell the truth in these proceedings.  Should you answer

23    intentionally any of the questions falsely, then you could be

24    charged with a separate crime of committing perjury, which

25    means uttering a false statement under oath.

1    Let me say as we begin that the purpose of this hearing

2    is to make sure that you're competent to plead guilty; that

3    is, you know what you're doing, you understand the

4    consequence of pleading guilty.

5    I want to make sure that your decision and, in fact,

6    your plea of guilty here this afternoon is being made freely

7    and voluntarily.  I want to make sure you understand the

8    nature of the charge or charges to which your plea of guilty

9    is being offered, as well as the maximum penalty provided by

10    law for that punishment.  Or in the event there is any

11    mandatory minimum sentence involved, that you understand that

12    as well.

13    I also want to make sure that there is a basis in fact

14    for your guilty plea.  That is, is there an independent basis

15    in fact that you agree to that supports your plea of guilty;

16    which means, of course, that you did commit those acts that

17    constitute the crime for which you are charged in this case.

18    So let me ask all of you.  Do all of you understand that

19    by pleading guilty here this afternoon that you're waiving

20    your constitutional rights to a trial by jury to determine

21    whether or not you are guilty of this crime?

22    And do you further understand that by pleading guilty

23    here today that after the plea has been accepted you will be

24    considered convicted of that particular crime?

25    I'll start here with you, Ms. McWhorter.  Do you

```
 1    understand that?

 2              DEFENDANT B. McWHORTER:  Yes, sir.

 3              THE COURT:  Mr. Kennedy?

 4              DEFENDANT A. KENNEDY:  Yes, sir.

 5                        (Proceedings continued.)

 6              THE COURT:  Is your decision to plead guilty a

 7    result of discussions that each of you have had with your

 8    individual lawyers in this case?  And have you told your

 9    lawyer all the facts which you believe these charges are

10    based upon?

11        Ms. McWhorter?

12              DEFENDANT B. McWHORTER:  Yes, sir.

13              THE COURT:  Mr. Kennedy?

14              DEFENDANT A. KENNEDY:  Yes, sir.

15                        (Proceedings continued.)

16              THE COURT:  I'm now going to ask each of you some

17    individual information about you individually.  And we'll

18    have to go down the line for this.  I'll just ask you to wait

19    patiently until I get to you, but we'll go through this

20    pretty quickly.

21        My first questions on this segment of the hearing will

22    be directed to you, Ms. McWhorter.

23        First, state your full name, please.

24              DEFENDANT B. McWHORTER:  Beatrice Lynn McWhorter.

25              THE COURT:  I'm going to ask all of you to speak up
```

```
 1        loudly.  There's only a couple of microphones.  The court
 2        reporter has to hear every word you say, because she has to
 3        take it down.  I have to hear it, too.  And she hears better
 4        than I.  So speak loudly in answer to the questions.
 5                              (Proceedings continued.)
 6             THE COURT:  Next you, Mr. Kennedy.
 7        How old are you, please, sir.
 8             DEFENDANT A. KENNEDY:  36, sir.
 9             THE COURT:  And your full name, please.
10             DEFENDANT A. KENNEDY:  Anthony Wayne Kennedy.
11             THE COURT:  And how much education do you have?
12             DEFENDANT A. KENNEDY:  14 years.
13             THE COURT:  Where have you worked in the past?
14             DEFENDANT A. KENNEDY:  Construction.
15             THE COURT:  Pardon me?
16             DEFENDANT A. KENNEDY:  Construction.
17             THE COURT:  What kind of construction work did you
18        do?
19             DEFENDANT A. KENNEDY:  Framing.
20             THE COURT:  Any other jobs?
21             DEFENDANT A. KENNEDY:  No, sir.
22                              (Proceedings continued.)
23             THE COURT:  The next several questions will be
24        asked to you as a group, but it will require individual
25        answers.
```

```
1              Have any of you ever been treated for any mental illness
2       or addiction to narcotic drugs of any kind?
3       Ms. McWhorter?
4              DEFENDANT B. McWHORTER:  No.
5              THE COURT:  Mr. Kennedy?
6              DEFENDANT A. KENNEDY:  Yes, sir.
7              THE COURT:  Tell me about that.
8              DEFENDANT A. KENNEDY:  I went to drug and
9       alcohol --
10             THE COURT:  Speak up.
11             DEFENDANT A. KENNEDY:  I went to drug and alcohol
12      treatment.
13             THE COURT:  When was that?  Just approximately.
14             DEFENDANT A. KENNEDY:  '94.
15             THE COURT:  Were you an inpatient?
16             DEFENDANT A. KENNEDY:  Yes, sir.
17             THE COURT:  Was that followed by some outpatient
18      care, as well?
19             DEFENDANT A. KENNEDY:  Yes, sir.
20             THE COURT:  Were you able to stay off of drugs and
21      alcohol after your treatment?  Or did you relapse and start
22      using again?
23             DEFENDANT A. KENNEDY:  Relapsed and starting using
24      again.
25             THE COURT:  What was the drug?  Cocaine?
```

1    Marijuana?

2            DEFENDANT A. KENNEDY:  Marijuana, alcohol, various

3    pharmaceutical prescriptions.

4            THE COURT:  How long were you able to stay off?

5            DEFENDANT A. KENNEDY:  About four years.

6            THE COURT:  Did you continue to use up until the

7    time you were arrested in this case?

8            DEFENDANT A. KENNEDY:  Yes, sir.

9                            (Proceedings continued.)

10           THE COURT:  Are any of you defendants under the

11   influence of any drug or medication or alcoholic beverage

12   this afternoon?

13       Ms. McWhorter?

14           DEFENDANT B. McWHORTER:  No, sir.

15           THE COURT:  Mr. Kennedy?

16           DEFENDANT A. KENNEDY:  No, sir.

17                            (Proceedings continued.)

18           THE COURT:  Have all of the defendants received a

19   copy of the indictment which contain the written charges

20   against you in this case?  The written indictment.

21                       (Affirmative answers given in unison.)

22           THE COURT:  I saw everybody shake their head except

23   you, Ms. Leonard.

24           DEFENDANT C. LEONARD:  I said yes, sir.

25           THE COURT:  Okay.  I'm sorry.  Let me just ask you

1    all individually then.

2        Ms. McWhorter?

3            DEFENDANT B. McWHORTER:  Yes.

4            THE COURT:  Mr. Kennedy?

5            DEFENDANT A. KENNEDY:  Yes, sir.

6                        (Proceedings continued.)

7            THE COURT:  The indictment, as I said, contains

8    written charges against you which represent the alleged

9    violations of law which you plan to plead guilty to by being

10   here today.  Have each of you discussed these charges

11   carefully with your lawyer?

12                    (Affirmative answers given in unison.)

13           THE COURT:  All have indicated that you have.

14       Let me say that the indictment is a legal document, of

15   course, but it is a document that's designed to advise you

16   about the charges to which you must stand trial.  The

17   indictment itself is no conviction whatsoever.  It's a

18   document to notify you of the charges on which you must stand

19   trial.

20       Under our law, everyone accused of a crime is presumed

21   to be innocent.  Even though you've been indicted, under our

22   law you are assumed to be innocent.  In other words, you do

23   not have to prove you're not guilty.  Rather, it's up to the

24   Government to prove that you are guilty.

25       But, of course, by pleading guilty here today you are

1    admitting that you are guilty, so you are relieving the

2    Government of its obligation to prove that you are guilty.

3    Do all of you understand that?

4         Ms. McWhorter?

5              DEFENDANT B. McWHORTER:  Yes, sir.

6              THE COURT:  Mr. Kennedy?

7              DEFENDANT A. KENNEDY:  Yes, sir.

8                             (Proceedings continued.)

9              THE COURT:  Have you discussed with your lawyers

10   what the Government must prove in order to find you guilty of

11   these charges against you?

12        Ms. McWhorter?

13             DEFENDANT B. McWHORTER:  I didn't understand the

14   question.

15             THE COURT:  Pardon me?

16             DEFENDANT B. McWHORTER:  I didn't understand the

17   question.  I'm sorry.  Repeat it.

18             THE COURT:  Okay.  Have each of you discussed with

19   your lawyers what the Government would have to prove in order

20   to find you guilty of the charges against you in the

21   indictment?

22             DEFENDANT B. McWHORTER:  Yes, sir.

23             THE COURT:  What about you, Mr. Kennedy?

24             DEFENDANT A. KENNEDY:  Yes, sir.

25                             (Proceedings continued.)

1          THE COURT:  The indictment in this case consists of

2    two counts.  Ms. McWhorter and Mr. Kennedy are named in both

3    counts; the rest of you are named only in Count 1.

4          The indictment was issued on August the 29th, 2007.  The

5    first count is a conspiracy count.  Conspiracy is an

6    agreement between two or more persons to do an illegal act.

7    In this case, the illegal act is described in the indictment.

8          In Count 1, the conspiracy consists of producing false

9    ID documents, which in this case were fraudulent driver's

10   licenses.  It also consists of transferring counterfeit

11   securities, meaning those fraudulent payroll checks.

12         It also consists of transferring the driver's licenses

13   which were manufactured in -- they constituted false

14   identification documents.  They had your individual

15   photographs, but they contained the identity of others, to

16   facilitate the cashing of fraudulent payroll checks.  So

17   those charges are --

18         Also included in the conspiracy was to transfer more

19   than five false driver's licenses, as well as making the

20   fraudulent payroll checks.

21         The second count consists of possessing with intent to

22   transfer five or more false ID documents, which in this case

23   were the fraudulent driver's licenses.

24         In order to prove you guilty of this conspiracy count,

25   the Government would have to prove certain things.  They're

1     called elements of the offense.

2          First, they would have to prove there was, in fact, a

3     conspiracy, this agreement; which does not have to be in

4     writing, but there has to be some understanding or an

5     agreement between the participants.

6          The participants must be two or more persons.  And they

7     have to agree to commit whatever the underlying crimes were.

8     In this case it was manufacturing and possessing these false

9     identity documents and passing the counterfeit securities of

10    various organizations that were reputed to be employers.

11         Secondly, they would have to prove that you knew what

12    you were doing.  That is that you knowingly and intentionally

13    agreed to participate in some way in this conspiracy.

14         And thirdly, they would have to prove that you or other

15    members of the conspiracy committed at least one of the acts

16    alleged in the indictment to accomplish the goals of the

17    conspiracy.

18         As I mentioned, only Ms. McWhorter and Mr. Kennedy are

19    named --

20         Excuse me.  All of you are named in Count 1.  I had that

21    backwards.  All of you are named in Count 1.  Ms. McWhorter

22    and Mr. Kennedy are also named in Count 2.  And the rest of

23    you are not named in Count 2.

24         So the elements I've just read will apply to each of

25    you, each of whom are planning to plead guilty to Count 1.

1     Do any of you then have any questions about what the

2     Government would have to prove in order to find you guilty of

3     this offense?

4         Ms. McWhorter?

5             DEFENDANT B. McWHORTER:  No, sir.

6             THE COURT:  Mr. Kennedy?

7             DEFENDANT A. KENNEDY:  No, sir.

8                         (Proceedings continued.)

9             THE COURT:  With regard to Count 2 of the

10    indictment -- which, as I said, is a charge of possession of

11    false identity documents; the indictment says five or more

12    false identity documents -- the Government would have to

13    prove the following:

14        First, they would have to prove that that individual

15    defendant knowingly possessed five or more false identity

16    documents.  The indictment says five or more false identity

17    documents, so they would have to prove that you did possess

18    with intent to transfer five or more false identity

19    documents.

20        Secondly, they would have to prove that you knowingly

21    possessed these.  In other words, you possessed them and knew

22    they were false.  And that you possessed them knowing they

23    were false, with an intent to use them unlawfully, in some

24    unlawful manner, in order to pass counterfeit securities.

25        Thirdly, they would have to show that your act of

1    possessing the fraudulent identification documents was or did

2    affect interstate commerce.  In other words, you were

3    engaging in some trade activity that affected interstate

4    commerce.

5        Do you have any question, Ms. McWhorter and Mr. Kennedy,

6    about what the Government must prove in order to find you

7    guilty of Count 2?

8                DEFENDANT B. McWHORTER:  No, sir.

9                DEFENDANT A. KENNEDY:  No, sir.

10                THE COURT:  Have your lawyers talked to you or have

11    you discussed with your lawyers any potential defenses that

12    you would have to the charges against you as I have just

13    read?

14        Ms. McWhorter?

15                DEFENDANT B. McWHORTER:  Yes, sir.

16                THE COURT:  Mr. Kennedy?

17                DEFENDANT A. KENNEDY:  Yes, sir.

18                                (Proceedings continued.)

19                THE COURT:  Are each of you satisfied with the

20    advice that your lawyer has given to you up to this point?

21        Ms. McWhorter?

22                DEFENDANT B. McWHORTER:  Yes, sir.

23                THE COURT:  Mr. Kennedy?

24                DEFENDANT A. KENNEDY:  Yes, sir.

25                                (Proceedings continued.)

1          THE COURT:  Do any of you have any complaints about

2     the investigation that your lawyer has done on your behalf?

3     Or do you have any complaints about things that he or she has

4     not done that you believe he or she should have done?

5          Ms. McWhorter?

6               DEFENDANT B. McWHORTER:  No, sir.

7               THE COURT:  Mr. Kennedy?

8               DEFENDANT A. KENNEDY:  No, sir.

9                              (Proceedings continued.)

10          THE COURT:  With regard to the maximum penalty

11     provided for the offenses to which you plan to plead guilty,

12     I'll first state it with regard to Count 1, which is the

13     conspiracy count.  That applies to each of you.

14          The maximum penalty provided by law is imprisonment for

15     not more than five years.  The law also provides that the

16     Court may impose a fine of not more than $250,000.

17          The law also requires that after you're released from

18     prison that you may be sentenced to a period of supervised

19     release of not more than one year.  And you'll also be

20     subject to a special assessment of $100.

21          With regard to Count 2, which applies to Ms. McWhorter

22     and Mr. Kennedy, which is possession of more than five or

23     more false identification documents, the maximum prison term

24     is not more than 15 years.

25          The fine is the same, not more than $250,000.  The

1    supervised release is a bit longer.  You may be sentenced to

2    supervised release of not more than three years.

3         And, again, there will be a separate special assessment

4    of $100 for Count 2.

5         Do either of you, Ms. McWhorter or Mr. Kennedy, have any

6    questions about the maximum penalty provided in Count 2?

7              DEFENDANT B. McWHORTER:  No, sir.

8              DEFENDANT A. KENNEDY:  No, sir.

9              THE COURT:  I'm sure each of your lawyers have

10   discussed with you the possible sentences and the sentencing

11   guidelines, which I wish to discuss with you a bit too.

12        Let me say first that there is no longer any parole in

13   the criminal justice system, federal criminal justice system.

14   So if you are sentenced to prison for a certain period of

15   time, you'll have to serve all of that time except for up to

16   54 days of good time credit, which may be earned by you as

17   credit against your sentence.

18        The good time credit is not automatic, but you may earn

19   up to 54 days of good time credit against your sentence.

20   However, the 54 days of good time credit does not vest or

21   apply until each year you have served, but you may earn that

22   amount off your sentence.

23        After you're released from prison, you'll be subject to

24   a period of supervised release, which is a type of probation.

25   But it's different from probation, in that you are supervised

1       actively by a probation officer of the federal court.

2          During the period of supervised release, you'll have to

3       meet certain conditions.  Some of those conditions will

4       restrict you or prohibit you from doing certain things.

5       Other conditions will require you to do certain things during

6       this period of time.

7          There are a lot of different conditions.  They generally

8       require you to obey the law and behave yourself.  And if you

9       do that, you will not have any trouble.  By way of example --

10      although I will not read them all, I'll give you an example

11      of the types of conditions that you'll have to comply with

12      while you're on supervised release.

13         You'll have to report to your probation officer once a

14      month, and at that time you'll be asked to complete a

15      truthful and complete report of your activities.  It must be

16      truthful.

17         You'll have to follow the directions of the probation

18      officer and answer truthfully all inquiries by the probation

19      officer.

20         You'll be required to allow the probation officer to

21      visit you at any time, at home, work, or elsewhere.

22         You'll be prohibited from possessing any illegal drugs.

23      You'll be prohibited from using any illegal drugs.  And

24      you'll be subject to two periodic drug tests after you're

25      released from prison and as many other random drug tests as

1    the probation officer deems appropriate.

2         You'll be prohibited from leaving the judicial district

3    where you reside without permission of the Court or the

4    probation officer.

5         For those of you that live in Nashville or this

6    surrounding area, the Middle District of Tennessee comprises

7    32 counties.  Generally, westward to the Tennessee River;

8    eastward to just past Cookeville on the Cumberland Plateau;

9    and from Kentucky to Alabama.

10        So if you go outside that boundary, you'll have to get

11   permission of the probation officer.

12        You'll be required to notify the probation officer if

13   you change your residence or place of employment, 10 days in

14   advance of that event.

15        If you are arrested or questioned by a law enforcement

16   officer, you will have to report that event to the probation

17   officer, even if it's for a speeding ticket, within 72 hours.

18        You will be prohibited from going around or frequenting

19   any place where illegal drugs are possessed, stored,

20   manufactured, used, or administered or distributed in any

21   way.

22        You'll be prohibited from associating with any person

23   that's previously been convicted of a felony without

24   permission of the probation officer.  A felony is an offense

25   that is punishable by more than one year.

1       You'll be required to allow the probation officer to

2    visit you at any time, at home, work, or elsewhere.  And if

3    the probation officer sees any contraband in plain view, then

4    the probation officer may seize the contraband.

5       If, as a result of drug tests, you are found to be using

6    illegal drugs, the probation officer may notify the Court.

7    After a hearing, the Court will determine whether you have

8    violated a condition of your supervised release.  If the

9    Court so finds, then the Court may revoke the supervised

10    release and require you to serve in prison up to the entire

11    period of the supervised release.

12       You'll be prohibited from drinking alcohol excessively.

13       You'll have to work at some lawful occupation and

14    support your dependents and meet other family obligations.

15       Those are the types of conditions that will apply during

16    this supervised release period.

17       Being on supervised release has other consequences, as

18    well.  If you do commit another crime while you're on

19    supervised release, you may receive a higher sentence for

20    that second crime because it was committed while you were on

21    supervised release.

22       Under the guidelines if you have had any prior

23    convictions within the last 15 years, those convictions may

24    serve to increase your sentence for this particular offense.

25       If you committed this particular offense while you were

1    on probation, parole, or supervised release from some prior

2    crime that you committed, then that may increase your

3    sentence under the guidelines.

4         If you committed the present offense less than two years

5    after being released from prison from some prior crime, that

6    may increase your sentence under the guidelines.

7         If you committed the present offense as a part of a

8    pattern of criminal conduct from which you derived a

9    substantial portion of your income, that may increase your

10   sentence under the guidelines.

11        You should be aware that probation is not available to

12   the sentencing judge for most federal offenses.  The

13   guidelines in federal court also require the Court to impose

14   a fine for each conviction unless the Court finds that you're

15   not in a financial position to pay such a fine.

16        The guidelines also provide that the Court must impose a

17   $100 special assessment for each count of conviction.

18        At sentencing the Court will also have to consider

19   certain things, one of which is restitution.  These are fraud

20   claims and the allegations are that you defrauded certain

21   people or entities.

22        In every federal sentence the Court must consider the

23   matter of restitution.  Restitution means to restore or pay

24   back money or property that may be lost by some victim of

25   your criminal activity.

1    So at sentencing I'll have to consider the subject of

2  restitution to determine if it applies in your individual

3  case; and if so, what amount of restitution should be made a

4  part of your sentence, to be decided by the Court.

5    I know very little about the facts of your case at this

6  point.  But I will have to consider the matter of restitution

7  as it applies to each of you individually in determining

8  what, if any, amount of restitution you should be required to

9  pay as a part of your sentence.

10    The Court will also have to consider what the guidelines

11  call relevant conduct.  Relevant conduct is defined in the

12  sentencing guidelines, but it applies to all circumstances,

13  damages, and other matters related to your criminal activity.

14  And that's true even though you're pleading guilty only to

15  the specific charges in the indictment and, specifically, the

16  counts of the indictment to which you're pleading guilty.

17    Do any of you have any questions about restitution or

18  relevant conduct as I have described those terms to you?

19    Ms. McWhorter?

20    DEFENDANT B. McWHORTER:  No, sir.

21    THE COURT:  Mr. Kennedy?

22    DEFENDANT A. KENNEDY:  No, sir.

23    (Proceedings continued.)

24    THE COURT:  These are felony offenses to which you

25  are pleading guilty, so the Court advises you that conviction

1    of a felony will deprive you of the right to vote in the
2    future.
3        You may not possess a firearm anytime in the future.
4    This prohibition against possession of a firearm applies for
5    the rest of your life, well beyond the period of supervised
6    release.
7        This conviction may be counted as one of the necessary
8    convictions should you later be prosecuted for being a
9    habitual criminal.
10        As you may know, conviction of a felony may make it more
11    difficult for you to be employed by some companies in a
12    certain position.
13        Now a word about the sentencing guidelines.  Again, I'm
14    sure your lawyers have discussed it with you, the sentencing
15    guidelines.
16        Let me just say first, as an overview, for every federal
17    crime that's committed there is a corresponding sentencing
18    guideline provision.  Those guideline provisions have been
19    promulgated by the United States Sentencing Commission,
20    they've been approved by the United States Congress, and they
21    form an advisory model for sentencing.
22        And sentencing judges are expected to pay attention and
23    take consideration of those guideline policies in imposing
24    sentence, along with certain factors that are contained in a
25    federal statute.

1    But, as I mentioned, for every federal crime there's a

2    corresponding sentencing guideline.  And that guideline will

3    determine a base offense level or a beginning point to begin

4    the calculations to determine a guideline range for

5    sentencing.

6    In fraud cases, the beginning point or the base offense

7    level is usually driven by the type of crime.  And so each of

8    you will have assigned a base offense level.

9    For most of you pleading guilty to the same count, the

10   base offense level may be the same.  I'm sure your lawyers

11   have considered that and your lawyers have discussed it with

12   Ms. Trombly as they prepared the proposed *Plea Agreement* on

13   your behalf.  But I suppose you know -- if you don't, I want

14   to make clear -- that I have not been involved in any of

15   those discussions.  I don't know what, if any, discussions

16   your lawyers have had with Ms. Trombly.

17   Ms. Trombly does not work for the court.  As a matter of

18   fact, she's not even in the same department.  I'm in the

19   Department of Judiciary.  She's in the executive branch of

20   the Government.  And your lawyers are not part of the court

21   and not part of the executive department either.  But they

22   have, I know, discussed it, because I've seen these proposed

23   agreements.

24   At any rate, there's a base offense level that has been

25   determined for each of you.  And that base offense number or

level is stated as a number, a numerical number.  Then to
that number other numbers or levels may be added, depending
on the circumstances of that case.

     And a number of factors have to be considered and
evaluated to determine if they apply in your case and, if so,
to what extent.  Because the guidelines may give some options
as to how many points or how many levels can be added,
depending on your conduct.

     Some factors are called aggravating factors, which
increase that base offense level.  That is, they're to be
added to that level.  And other factors are called mitigating
factors, which will reduce that number.

     So the Court will have to go over those same
calculations and evaluation to determine what final adjusted
base offense level you will have.  And after we do those
additions and any subtractions that need to be made, there
will be a final base offense level, which is stated again as
a number.

     The Court will then look at your criminal history to see
if you've had any past criminal convictions.  If you have,
you may have received what's called criminal history points.

     The guidelines allow you to accumulate up to three
criminal history points for any past conviction.  The points
are added from one to three.  Sometimes you get no criminal
history points; but if you do, you get from one to three,

1    depending on the severity of the punishment you received for
2    that past conviction.

3         The Court will add up all the criminal history points
4    you may have accumulated for your past convictions, and then
5    you will be assigned into a criminal history category.

6         There are six criminal history categories, with I being
7    the lowest and VI being the highest.  If you have over one
8    criminal history point, you automatically are assigned to the
9    next criminal history category, II.  I is the lowest.  VI is
10   the highest.  If you have 13 or more, you are in the highest
11   criminal history category, VI.

12        Then there's a table that transposes your adjusted base
13   offense level and your criminal history category into a
14   guideline range for sentencing, which is stated from a
15   minimum number of months to a maximum number of months.  And
16   that represents your advisory guideline range for sentencing.

17        The Court is not obligated by law to sentence you within
18   that guideline range.  I will say that most sentences are
19   within that guideline range, but there's no guarantee that
20   yours will be.

21        Have each of you discussed with your lawyers the
22   guidelines, the federal sentencing guidelines, and the
23   guideline range that will be applicable to your particular
24   case?

25        Ms. McWhorter?

1      DEFENDANT B. McWHORTER:  Yes, sir.

2      THE COURT:  Mr. Kennedy?

3      DEFENDANT A. KENNEDY:  Yes, sir.

4                          (Proceedings continued.)

5      THE COURT:  Let me ask the lawyers.

6   Do all of you have the originals of the *Petition to*

7   *Enter a Guilty Plea* and *Plea Agreement*?

8      MR. GONZALEZ:  Yes, sir.

9      THE COURT:  All right.  Would each of you put that

10  document in front of the defendant, so I can point out some

11  things to them just to make sure that they understand.  If

12  they have questions, they can ask each of you.

13     I'll say to the defendants if you do have questions,

14  then you may simply turn or motion for your lawyer to come

15  and speak to you about that.

16     I have reviewed these, and most of these *Petitions to*

17  *Enter a Guilty Plea* and *Plea Agreement*s are very similar.

18  Although there may be some differences that I did not detect,

19  because I didn't go over them as closely as I would if I was

20  looking just to see any differences.

21     What I'm going to ask all of you to do is look first at

22  this *Petition to Enter a Guilty Plea*, which may be the first

23  document.  And you'll see --

24     I'm looking now at Ms. McWhorter's document.  On Page 2

25  of your *Petition to Enter a Guilty Plea*, in the middle of the

1    page, it says that your lawyer has estimated that your

2    adjusted base offense level will be 19.  And that at this

3    point, based on the information that Mr. Gonzalez knows,

4    you'll be in Criminal History Category II, which would result

5    in a guideline range for sentencing of from 33 to 41 months.

6        It goes on to say that this is just an estimate by your

7    lawyers.  It's not guaranteed and it's not a promise.  It's

8    based on the best information that he has at this time.

9        And then if you will -- your petition runs through Page

10   7.  The next page should be the beginning of what's called a

11   *Plea Agreement*, which represents an agreement.  And it will

12   represent for each of you an agreement between yourselves,

13   your lawyer, and Ms. Trombly about your guilty plea in this

14   case.

15       The *Plea Agreement* has a more detailed calculation of

16   the guideline range in your case.  And, again, I'm on

17   Ms. McWhorter's, and I'm looking at Page 7.  And there's a

18   beginning discussion of the sentencing guideline

19   calculations.

20       And, of course, Ms. McWhorter and Mr. Kennedy are

21   charged in both Counts 1 and 2.  And under the provisions of

22   the guidelines, there are considerations for what's called

23   grouping of counts that are considered to be related.  And

24   under those guidelines, Counts 1 and 2 will be grouped

25   together for purposes of calculating the guideline range

because they're commonly connected with this criminal
objective and common plan or scheme.

So the guidelines say that when you do this, you have to
make these separate calculations. But they're grouped, and
you pick the one with the largest sentencing guideline range.

But it starts with a base offense level of six. You see
in 11(a)(ii), it says the base offense level for the group is
six.

Then there is an increase, which is an aggravating
factor, because of the amount of the loss. It says because
the loss in this case was greater than $200,000 but less than
$400,000. That's a range that assigns 12 points. It could
be higher or lower, depending on what that intended loss or
actual loss may be.

Then two additional points, it's recommended, would be
added because there were more than 10 victims. That's
another aggravating -- that's at the top of Page 8.

And an additional two points because sophisticated means
were used to carry out the crime. In this case, the
execution of the fraudulent scheme.

And then on (vi) it says it's recommended that you
receive a three-point reduction because you've cooperated and
accepted your responsibility for participating in this crime.
By doing so, you've avoided the necessity of further
investigation by the Government and the time and expense

1    required to prepare for trial.  So you get a three-level

2    reduction for that.

3        When considering the base offense level and the

4    additions and subtractions, that reduces your base offense

5    level to an adjusted base offense level of 19.

6        Then it looks at your criminal history.  As you see, you

7    have had prior convictions.  And those convictions result in

8    some criminal history points.  I don't know how many, but

9    enough to put you in Criminal History Category II.

10       So that results in an anticipated advisory sentencing

11   range of from 33 to 41 months.  That's under (b) in the

12   middle of the page on Page 9.

13       Again, that's your -- in this case, it's not just your

14   lawyer, it's what your lawyer and Ms. Trombly believe should

15   be the appropriate sentencing guideline range in your case

16   based on the information that they know at this particular

17   time.

18       Do you have any question about any of that?

19           DEFENDANT B. McWHORTER:  No, sir.

20           THE COURT:  Mr. Kennedy, yours should be the same.

21       You've got a *Petition to Enter a Guilty Plea*.  That

22   should be the first document.  And at the top of Page 2,

23   yours does not state a --

24       Your petition does not state a specific estimate by your

25   lawyer.  It simply says your lawyer has given you an estimate

1    of the guideline range that may apply in your case.  You

2    realize that it's an estimate, but no specific range is

3    stated as it was in Ms. McWhorter's case.

4         Then if you turn over past Page 6, you'll get to the

5    *Plea Agreement*.  And on Page 7, there is again a discussion

6    of your individual guideline calculations that your lawyer

7    and Ms. Trombly have discussed.  And again it says that your

8    Counts 1 and 2 should be grouped.  That's at the bottom of

9    Page 7.

10        And at the top of Page 8 it says your base offense level

11   should be six.  That is the beginning point.  As with

12   Ms. McWhorter, 12 points should be added because the loss was

13   greater than $200,000 but less than 400.

14        Another two points because there are more than two

15   victims.  Another two points because sophisticated means were

16   used in carrying out the fraudulent scheme.  And then a

17   subtraction of three points because of your --

18        No.  Excuse me.  Under (vi) it says that there will be

19   an additional three points because you acted as a manager or

20   supervisor of the criminal activity; that is, of the

21   conspiracy.  And that the conspiracy was extensive and

22   involved more than five participants.

23        That's another aggravating factor contained in the

24   guidelines.  So there will be three additional points added

25   for that.

1    And then under (vii) on Page 8, the last paragraph, it's

2    recommended that you get a three-point reduction as well.

3    On the top of Page 9 is the criminal history

4    calculation.  It notes certain crimes that you've had in the

5    past.  And you have accumulated sufficient criminal history

6    points to put you in the next category, Criminal History

7    Category III.

8    So your adjusted base offense level is 22.  And with a

9    Criminal History Category of III, you have an anticipated or

10   recommended advisory guideline range of from 51 to 63 months.

11   And you see there's a fine -- an estimated fine there,

12   too.

13   Do you have any questions about any of the recommended

14   calculations that you and your lawyer and Ms. Trombly are

15   recommending?

16         DEFENDANT A. KENNEDY:  No, sir.

17                     (Proceedings continued.)

18         THE COURT:  Let me finish here.

19   I don't have to agree with their recommendation.  Now,

20   all of your lawyers are experienced.  I know them.  I've seen

21   them here in the courtroom.  They know the sentencing

22   guidelines.  I know they're giving you their best knowledge.

23   Ms. Trombly has been prosecuting cases for a while.  And

24   they're making a recommendation to me.  I don't have to

25   accept their recommendation.

1        Mr. Lenahan is saying he just found out some information

2   he didn't know before.  I don't know whether it affects his

3   agreement with Ms. Trombly or not.  I'll let them talk about

4   that.

5              MR. LENAHAN:  It won't affect the agreement, Your

6   Honor, at all.

7              THE COURT:  Okay.

8              MR. LENAHAN:  If you want me to make a footnote

9   there, I will.  But it's just something I found out.

10             THE COURT:  Well, you might want to do that, just

11  because you found out about it.

12       Let me just tell the defendants one other thing.  After

13  this guilty plea hearing, the United States Probation

14  Department will assign each of you a probation officer to

15  prepare what's called a *Presentence Investigative Report*.

16  And that information will have a lot of background

17  information about each of you.  Its purpose is to aid me in

18  sentencing.

19       So it will have personal information about you.  Not

20  just about this conspiracy or this charge, but it will have a

21  lot of personal information about you, about your families,

22  your upbringing, your mothers and fathers, brothers and

23  sisters if you have any, any marriages that you may have, any

24  children that you may have, where you've worked, your health,

25  your finances.

1          It will have a factual statement about how this scheme
2     developed and how it was played out and your part in it.  And
3     then it will have a recommended calculation of your guideline
4     range for sentencing, just as we've gone over.  But they do
5     that independently of what your lawyer and Ms. Trombly have
6     done.
7          So I'll get that.  I'll have your agreement with the
8     Government.  So that will all be before me at the sentencing
9     hearing.  But before the sentencing hearing, you and your
10    lawyer will get a copy of that investigative report, prepared
11    by your probation officer.  And you'll have a chance to
12    review it with your lawyer.  You'll have a chance to go over
13    the facts in that report and see if you agree with them.
14         If you have any objections, you, through your lawyer,
15    can take it up with the probation officer that prepared the
16    report and see if you can correct anything that you think is
17    in error.
18         If you are not able to correct any objection that you
19    may have to the report, then you can take it up at the
20    sentencing hearing before I impose sentence.  And I will
21    decide whether to change it or not after I hear from you and
22    I hear from the probation officer and the Government.
23         But in the final analysis, it will be I, as the
24    sentencing judge, that will determine each of your guideline
25    ranges for sentencing, which is an advisory range.  It's not

1   mandatory.  But I'll have to establish an advisory guideline

2   range for sentencing.  And then it will be up to me to

3   determine what individual sentence is to be imposed in each

4   of your cases.

5        And I will consider it individually.  Even though you

6   may be convicted of the same crime, you all are different.

7   You may get the same sentence, but you may not.

8        But there will be this investigative report.  And it's

9   prepared independently of the Government.  And it's

10  independent of the Court, although the probation department

11  is an arm of the United States District Court.

12       Do any of you have any question about how that process

13  will work with regard to the probation officer?

14                      (Negative answers given in unison.)

15            THE COURT:  I'll go ahead and tell you that in

16  order to gather this personal background information from

17  each of you, it will be necessary to sit down with you for an

18  interview.  Otherwise, they wouldn't know.  So they'll ask

19  for an interview with each of you and you'll be sworn to tell

20  the truth.

21       If you intentionally answer falsely in any of the

22  answers that you give to the questions asked by the probation

23  officer, that may increase your sentence under the

24  guidelines.

25       If you want your lawyer to be present when you're

1    interviewed by the probation officer, then you can request

2    your lawyer to be present when you're interviewed to gather

3    this background information and your lawyer can be present at

4    that time.

5         Do any of you have any questions about the *Presentence*

6    *Investigative Report* and how it's prepared and how it will be

7    used to assist me at sentencing?

8         Any questions?

9                          (Negative answers given in unison.)

10        THE COURT:  I see there are none.

11        I've gone over these calculations in these *Plea*

12   *Agreement*s because I want to make sure that you understand

13   them generally.  You have to rely largely on your lawyer,

14   because it's a complicated process in learning those things.

15   But you've all indicated --

16        Let me ask again.  Have all of you gone over these

17   calculations as to your recommended sentencing guideline

18   range with each of your lawyers?

19             MS. MORRIS:  Your Honor, excuse me.

20             THE COURT:  Yes.

21             MS. MORRIS:  You haven't gone through Ms. Simpson's

22   yet.

23             THE COURT:  Pardon me?

24             MS. MORRIS:  I don't believe you've gone over

25   Ms. Simpson's *Plea Agreement* yet.

1          THE COURT:  I have not?  Okay.  Thank you.  Well, I

2    haven't gotten to her yet.  Excuse me, Ms. Simpson.

3        Thank you.

4                        (Proceedings continued.)

5          THE COURT:  Have each of you read these documents,

6    the *Petition to Enter a Guilty Plea* and the *Plea Agreement*?

7        Have each of you gone over those documents and do you

8    believe -- you've read them carefully and you believe you

9    understand them?

10       Let me just say this before you answer the question.

11   These are legal documents, but they're prepared by lawyers.

12   You've heard Mr. Rodgers say that the *Plea Agreement* was

13   prepared by the Government and submitted to him for approval.

14       But ultimately, each of these documents will be signed

15   by you.  They represent your agreement to plead guilty in the

16   case.  And with regard to the *Plea Agreement*, it represents

17   your agreement with the Government about the recommendations

18   that are being made by you and the Government to the Court.

19       Have each of you read these documents carefully?  And do

20   you believe you understand them?

21       Ms. McWhorter?

22          DEFENDANT B. McWHORTER:  Yes, sir.

23          THE COURT:  Have you read it and do you believe you

24   understand it?

25          DEFENDANT B. McWHORTER:  Yes, sir.

```
1                    THE COURT:  Mr. Kennedy?

2                    DEFENDANT A. KENNEDY:  Yes, sir.

3                                    (Proceedings continued.)

4              THE COURT:  I'm going to ask this as a follow-up

5         question.

6            Have you not only read these documents yourself,

7         Ms. McWhorter, but have you discussed these documents

8         carefully with your lawyer?

9                    DEFENDANT B. McWHORTER:  Yes, sir.

10                   THE COURT:  And Mr. Kennedy?

11                   DEFENDANT A. KENNEDY:  Yes, sir.

12                                   (Proceedings continued.)

13             THE COURT:  If for some reason the Court doesn't

14        accept your Petition to Enter a Guilty Plea and your Plea

15        Agreement, you'll be able to change your plea from guilty to

16        not guilty.

17           On the other hand, if I do accept your petition and your

18        Plea Agreement, you will not be able to change your plea of

19        guilty to not guilty, even though I may not agree with all of

20        the recommendations that are made to me on your behalf.

21           Do you understand that, Ms. McWhorter?

22                   DEFENDANT B. McWHORTER:  Yes, sir.

23                   THE COURT:  Mr. Kennedy?

24                   DEFENDANT A. KENNEDY:  Yes, sir.

25                                   (Proceedings continued.)
```

```
1                    THE COURT:  I now want to ask whether or not any of

2        you are on probation, supervised release, or parole from any

3        prior sentence.

4             To repeat, are you presently under -- are you presently

5        on probation or parole or supervised release from any prior

6        offense?

7             Ms. McWhorter?

8                    DEFENDANT B. McWHORTER:  No, sir.

9                    THE COURT:  Mr. Kennedy?

10                    DEFENDANT A. KENNEDY:  Yes, sir.

11                    THE COURT:  Is that from some conviction in state

12        court?

13                    DEFENDANT A. KENNEDY:  Yes, sir.

14                    THE COURT:  Do you understand, Mr. Kennedy, that by

15        pleading guilty to this crime that that may be a violation of

16        your parole from the state offense?

17                    DEFENDANT A. KENNEDY:  Yes, sir.

18                    THE COURT:  And if it is, the state would have an

19        option to revoke your probation and require you to serve the

20        balance of your sentence in that state case.

21                    DEFENDANT A. KENNEDY:  Yes, sir.

22                    THE COURT:  Do you understand that?

23                    DEFENDANT A. KENNEDY:  Yes, sir.

24                                        (Proceedings continued.)

25                    THE COURT:  Knowing all the penalties and
```

1   implications of a guilty plea, do all the defendants still

2   wish to plead guilty?

3        Ms. McWhorter?

4             DEFENDANT B. McWHORTER:  Yes, sir.

5             THE COURT:  Mr. Kennedy?

6             DEFENDANT A. KENNEDY:  Yes, sir.

7                         (Proceedings continued.)

8             THE COURT:  I know your lawyers have talked to you

9   about your right to a jury trial.  All of you have a right,

10  as provided in the Constitution, to a jury trial.

11       All persons accused of a crime are entitled to a jury

12  trial and a speedy trial; a trial where you're represented by

13  a competent lawyer; a trial in which you are afforded the

14  opportunity for compulsory process, which means you have a

15  right to have subpoenas issued to require witnesses to come

16  and testify on your behalf, whether they want to come or not.

17       And if you pled not guilty, which you have a

18  constitutional right to do, you have a right, of course, to

19  require the Government to try to prove you're guilty.  And

20  they would have to do that not before me, but before a jury.

21       A jury would consist of citizens from this division of

22  this district court.  If you pled not guilty, the Court would

23  set a trial date and the jury administrator from this court

24  would summon a panel of prospective potential jurors.  They

25  would come to court on the trial date.

 1          They would all come here and we would have them sworn to

 2     tell the truth to questions asked of them.  Then we would

 3     seat them one by one.  First, in the jury box.  And we would

 4     have more than those seats in the jury box, so in the first

 5     row of seats and then over on the benches.

 6          Through a process of questions by the Court and lawyers

 7     for both sides, we would qualify those jurors.  That is, we

 8     would determine whether or not we determine they are

 9     qualified in the sense that they would be able to listen to

10     the evidence and make an objective finding of the facts in

11     the case and follow the law that the Court directs them

12     applies in the case.

13          The law allows the Court to dismiss jurors if the Court

14     doesn't believe that they can be objective to both sides of

15     the case and be fair.

16          In addition to that, the Court grants to both sides the

17     right to challenge certain jurors that they don't believe

18     could be entirely objective in the case.  If the Court

19     agrees, then those jurors would simply be dismissed.  There's

20     an unlimited number of challenge for cause, such as that.

21          And the law also gives both sides a right for the

22     lawyers for both sides to use their discretion in dismissing

23     jurors that they don't think would be appropriate in the

24     case.  That is, they don't believe they would have an open

25     mind to their side of the case.

1    When all of that process is completed, we would select

2    12 jurors.  That would be the jury in the case, along with

3    some alternates -- usually two, sometimes more.  And that

4    would be the group of citizens that would hear the evidence

5    presented by the Government.

6    And the trial would then proceed by both sides, the

7    Government and then each of your lawyers, giving an opening

8    statement about what the charges are and what the defenses

9    are.  And then the Government would try to prove their case

10   by calling witnesses who would be sworn here in court and

11   take the witness stand right here and testify in front of the

12   jury about what they believe the facts are.  That is, what

13   they believe you did that constitutes this crime.

14   Any person that testified for the Government would be

15   subject to cross examination by your own lawyer.  The

16   Government could not call you as one of its witnesses.  You

17   also have a constitutional right under the Fifth Amendment

18   not to give incriminating evidence against yourself.

19   After all the Government's witnesses have testified,

20   then you would have a chance to put on your own defense.  In

21   that regard you have a right to testify in your own defense,

22   if you wish.  You have a right to call witnesses if you so

23   wish, which the Court would require to come to court and

24   testify.

25   If you or any witness took the stand, the Government

1    would have a right to cross examine them.

2         After all the proof is in, the lawyers would give their

3    final arguments to the jury to try to point out those things

4    in the proof that they believe support their side of the

5    case.

6         After the final arguments, the Court would read the jury

7    the law that applies in the case.  And then the jury would be

8    excused from the courtroom to deliberate, to determine

9    whether the Government has met its high standard of proof, of

10   proving you guilty beyond a reasonable doubt.

11        All verdicts must be unanimous.  There's no majority

12   verdicts.  So unless each of the 12 jurors was convinced that

13   the Government has met its burden of proof in proving each of

14   these separate elements that I read earlier beyond a

15   reasonable doubt, then they couldn't find you guilty of that

16   offense.  If they did, then the jury would have convicted you

17   of that offense.

18        I remind you of that, although I know your lawyers have

19   talked to you about your right to a jury trial.  That's how a

20   jury trial, in a general way, would be conducted.

21        But it's important that you understand here today,

22   before we finalize this proceeding, that by pleading guilty

23   here today there will not be any jurors.  There will not be

24   even a trial date nor jurors.  There won't be any witnesses.

25   There will be no opportunity for the lawyers to even argue

whether you did this crime or not, because you're admitting
today that you did commit the crime.

In fact, there will only be one other hearing.  That
will be a final sentencing hearing that will be set by the
Court at a later date, in about 90 days or so.

Do any of you have any question about pleading guilty
and waiving your right to a jury trial?

Ms. McWhorter, do you have any questions?

DEFENDANT B. McWHORTER:  No, sir.

THE COURT:  Mr. Kennedy?

DEFENDANT A. KENNEDY:  No, sir.

(Proceedings continued.)

THE COURT:  Before I complete the hearing, I want
to point out a couple of other things in these documents and
give you a chance to talk to your lawyers about any questions
you have about that.

First, all of these conditions are important.  And by
pointing out just --

I talked about the calculations.  That's to make sure if
you have any questions, you can ask them to me or discuss
them with your lawyer.  But the *Plea Agreement* has a couple
of other things I want to make sure you understand fully.

First, each of you have in your *Plea Agreement* a section
called *Factual Basis*.  I'm just looking at Ms. McWhorter's.
They're all at about the same place.

1          The facts are a little bit different, as I recall, as I

2     read them, because all of you did not do the same things.

3     The scheme was generally the same.  The fraudulent scheme was

4     the same, but all of you did not do the exact same things.

5          But there is a *Factual Basis*.  In Ms. McWhorter's case,

6     it begins on Page 4, at the bottom of Paragraph 9.  And then

7     there follows some facts that relate to Count 1.  Then

8     there's some facts that relate to Count 2.

9          Now, as we've heard, these documents have been prepared

10    by the lawyers in the case.  But, as I said, they represent

11    your agreement.  You'll be asked to sign them.  And by

12    signing this agreement, you'll be agreeing that those facts

13    are true, because I will be relying on those facts to accept

14    your guilty plea.

15         So each of you have a statement of fact.  The facts are

16    similar, but there are some differences because you all

17    operated -- you didn't all have the same role in the offense.

18    But there is a statement in those facts about what -- not

19    only what all the scheme and the conspiracy was about, but

20    what you did in participating in the conspiracy.

21         There's also a section regarding restitution.  On

22    Ms. McWhorter's, it's on Page 13, at the bottom, beginning at

23    Paragraph 23.  But there's some victims that are identified,

24    along with the amount of the loss.  That will be subject to

25    restitution.

I can't say for sure that all these victims or the
amounts are the same for each of the agreements, but you
should look at them.  I'm sure your lawyers have looked at
them.  But I'll call it to your attention because restitution
will be an issue in the case, it seems to me at this point.

And I will rely on this recommendation made by your
lawyer and the Government's lawyer about restitution, along
with the report from the probation officer about what he or
she recommends would be the restitution for which you might
be held accountable in this case, along with any other
evidence that may be presented to me at the sentencing
hearing.

I do note that in some cases it's stated -- in
Ms. McWhorter's case, at the bottom of Page 14, in the last
paragraph, The defendant acknowledges that the above chart
may not contain each and every victim, as some victims are
still unknown to the Government at this time.  Though the
restitution is still being determined and apportioned, the
defendant understands and acknowledges that court-ordered
restitution to identified victims could amount to more than
$70,000, the acknowledged amount of the loss.

Now, in the guideline calculations, one of the enhancing
factors is that the loss is greater than $200,000 but less
than $400,000.  That's because of the -- I guess the number
of checks cashed.

1       As I say, I don't know all the facts about this case at

2  all.  I don't know that that is any sort of contradiction,

3  but I do know that 12 points are being added because the loss

4  falls in between $200,000 and $400,000 under that section of

5  the guidelines.

6       Next I want to call your attention to the section on

7  *Waiver of Appellate Rights*, which is on Page 16, Paragraph 28

8  in Ms. McWhorter's.  It may be at a different page, but it's

9  generally toward the back of the agreement.  And in that

10  section, you are waiving most of your appeal rights.

11       Now, the Government is also waiving most of its appeal

12  rights in this same paragraph.  But it states that you

13  understand, under Paragraph 28 of Ms. McWhorter's, on Page 16

14  -- and all the language is similar.  You understand that by

15  signing this agreement and pleading guilty, you are waiving

16  all the appellate rights that would have been available to

17  you if you exercised your right to go to trial.

18       Well, of course, none of you are going to trial, so you

19  don't have those same appeal rights.  You are pleading

20  guilty.

21       You also agree that you will not file any appeal from

22  the sentence imposed by the Court at your sentencing hearing;

23  nor litigate the amount that you receive by the Court after

24  you begin to serve your sentence under the statutes that are

25  stated in this paragraph, including any right you may have to

1    file a writ of habeas corpus, as to any sentence within or

2    below the anticipated guideline range.

3         And the Government also waives any right to appeal the

4    sentence imposed by the Court so long as the sentence is

5    within or above the anticipated guideline range -- within or

6    above the guideline range or below the guideline range if the

7    Government has moved for a downward departure.

8         And this agreement is binding on both parties.  However,

9    your waiver of appeal rights is not complete.  That is, you

10   do reserve certain rights to appeal.  And that's at the

11   bottom of this paragraph.

12        The rights of appeal or the grounds for appeal are

13   reserved so long as it involves a claim of involuntariness of

14   your plea of guilty, which we're taking a lot of time here to

15   make sure that your plea of guilty is voluntary.

16        But if you have a claim on the involuntariness of your

17   guilty plea or if you believe the Government has engaged in

18   prosecutorial misconduct or if you believe you've received

19   ineffective assistance of your own counsel, then you may file

20   an appeal.  So I'll call those additional provisions to your

21   attention.

22        Do any of the defendants have any question about these

23   additional procedures that I have just mentioned to you?

24        Ms. McWhorter?

25             DEFENDANT B. McWHORTER:  No, sir.

```
 1                THE COURT:  Mr. Kennedy?

 2                DEFENDANT A. KENNEDY:  No, sir.

 3                          (Proceedings continued.)

 4                THE COURT:  Do these documents, the Petition to

 5      Enter a Guilty Plea and the Plea Agreement, contain every

 6      understanding that you have with your lawyer and with the

 7      Government as it relates to the Plea Agreement about your

 8      plea of guilty in the case?

 9           Do they contain completely every understanding you have

10      about your plea of guilty in the case?

11           Ms. McWhorter?

12                DEFENDANT B. McWHORTER:  Yes, sir.

13                THE COURT:  Mr. Kennedy?

14                DEFENDANT A. KENNEDY:  Yes, sir.

15                          (Proceedings continued.)

16                THE COURT:  Has anyone undertaken to promise you,

17      guarantee you, or suggest to you what specific sentence you

18      will receive in this case, other than estimating the

19      guideline range?

20           Ms. McWhorter?

21                DEFENDANT B. McWHORTER:  No, sir.

22                THE COURT:  Mr. Kennedy?

23                DEFENDANT A. KENNEDY:  No, sir.

24                          (Proceedings continued.)

25                THE COURT:  Has anybody put any pressure on you,
```

1    physically or psychologically, in order to get you to plead

2    guilty in the case?

3        Ms. McWhorter?

4            DEFENDANT B. McWHORTER:  No, sir.

5            THE COURT:  Mr. Kennedy?

6            DEFENDANT A. KENNEDY:  No, sir.

7                            (Proceedings continued.)

8            THE COURT:  Have any of you had any alcoholic

9    beverage within the last 24 hours?  Or have any of you taken

10   any drugs, medicine, pills, hallucinogens, or anything else

11   containing a narcotic or mind-altering substance, other than

12   ones that have been mentioned for depression and one for this

13   mental imbalance situation?

14       Anything else that any of you have taken in that nature

15   within the last 24 hours?

16       Ms. McWhorter?

17           DEFENDANT B. McWHORTER:  No, sir.

18           THE COURT:  Mr. Kennedy?

19           DEFENDANT A. KENNEDY:  No, sir.

20                           (Proceedings continued.)

21           THE COURT:  Are all of your minds clear and you

22   know exactly what you're doing by pleading guilty here this

23   afternoon?

24       Ms. McWhorter?

25           DEFENDANT B. McWHORTER:  Yes, sir.

```
1                    THE COURT:  Mr. Kennedy?

2                    DEFENDANT A. KENNEDY:  Yes, sir.

3                                   (Proceedings continued.)

4                    THE COURT:  I'll ask all the lawyers these

5          questions.

6               First, do each of you believe your respective client is

7          competent to enter a plea of guilty?

8               Secondly, have you discussed with them the advantages,

9          as well as the disadvantages, of a jury trial?

10              And third, do you believe your client is making a

11         knowingly and voluntary waiver of his or her right to a jury

12         trial?

13              Mr. Gonzalez?

14                   MR. GONZALEZ:  Yes, sir.

15                   THE COURT:  Mr. Flanagan?

16                   MR. FLANAGAN:  Yes, Your Honor.

17                                  (Proceedings continued.)

18                   THE COURT:  Do all of you believe --

19              Let me ask it this way.  Has anything come to your

20         attention which raises a question at all about the competence

21         of your client to waive a jury trial?

22              Mr. Gonzalez?

23                   MR. GONZALEZ:  No, sir.

24                   THE COURT:  Mr. Flanagan?

25                   MR. FLANAGAN:  No, Your Honor.
```

1          (Proceedings continued.)

2          THE COURT:  Okay.  Ms. Trombly, I don't have any

3    questions for you.  I'm assuming the Government is relying on

4    the written statements of the facts by each of the defendants

5    to support their respective pleas of guilty.

6          MS. TROMBLY:  That's correct, Your Honor.  Thank

7    you.

8          THE COURT:  So is it true as to each of these

9    defendants that you are pleading guilty here this afternoon

10   because, in fact, you are guilty of the offense to which you

11   are entering your plea?

12      Is that true, Ms. McWhorter?

13          DEFENDANT B. McWHORTER:  Yes, sir.

14          THE COURT:  Mr. Kennedy?

15          DEFENDANT A. KENNEDY:  Yes, sir.

16          (Proceedings continued.)

17          THE COURT:  Ms. Trombly, has anything come to your

18   attention that raises a question as to the competence of any

19   of these defendants to waive their right to a jury trial and

20   enter a plea of guilty?

21          MS. TROMBLY:  No, Your Honor.

22          THE COURT:  The Court has observed the appearance

23   of each of these defendants and noted their responsiveness to

24   the questions asked of them by the Court.  Based on the

25   answers given and the Court's observation, the Court makes

these findings:

Each of the defendants is in full possession of their faculties and they are competent to plead guilty.

Each of them is not under the influence of any narcotics, hallucinogens, alcohol, or other mind-altering substance.

They each understand the nature of the charge to which their respective plea is offered, as well as the maximum possible penalty provided by law.

Each waives his or her constitutional rights to a jury trial and the constitutional rights accorded all persons accused of a crime.

Each is aware of the *Plea Agreement* and *Petition to Enter a Guilty Plea* made in their behalf. Each of the defendants adopts the terms of their documents, including the *Petition to Enter a Guilty Plea* and *Plea Agreement*.

The Court finds that each has knowingly offered to plead guilty voluntarily.

Finally, the Court finds that there is an independent basis in fact to support each of the pleas of guilty.

I would ask each of the lawyers to have their clients sign the *Petition to Enter a Guilty Plea*, as well as the *Plea Agreement*. And then sign -- excuse me, sign both of those documents in the space provided and then to initial each page of both documents.

1        Then if the lawyers would sign in the space provided by

2    them on both documents and pass it to Ms. Trombly for her

3    signature on both documents, as well.

4                         (Pause in proceedings.)

5         THE COURT:  Before we conclude the guilty plea

6    hearing, do any of the defendants have any questions before

7    we adjourn?  Either of me or your lawyers.

8                         (No response.)

9         THE COURT:  The sentencing hearings will be set by

10   separate order by the Court.  As I say, it's usually in about

11   90 days.  But we will set a separate hearing for each of you.

12   Some of them may be combined, as we have here today, but I

13   don't know that for a fact.

14       So if there's no other --

15            MS. TROMBLY:  Your Honor --

16            THE COURT:  Pardon me.

17            MS. TROMBLY:  Before we conclude, Your Honor, may I

18   be heard briefly?

19            THE COURT:  Yes.

20            MS. TROMBLY:  Your Honor, thank you.

21       At this time the Government would move the Court to seal

22   each of the *Plea Agreements* in this case.  The Government has

23   received strong evidence of potential threats being received

24   by several of these defendants.  And what may not amount to

25   threats is certainly witness tampering.

1       And we have concerns that between now -- the gap between

2    now and any trial that may or may not take place with other

3    co-defendants or the other co-defendant, we're very concerned

4    that that type of behavior might continue.  Because of that,

5    we would move that these documents be sealed to protect each

6    of these individuals.

7            THE COURT:  All right.  That motion will be

8    granted.

9            MS. TROMBLY:  Thank you, Your Honor.

10                        (Proceedings continued.)

11           THE COURT:  If there's no other matters to come

12   before the Court, then we'll stand adjourned.

13                   (Recess was taken at 3:30 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                         REPORTER'S CERTIFICATE

2

3                  I, Dorothy Stiles, Official Court Reporter

4       for the United States District Court for the Middle District

5       of Tennessee, with offices at Nashville, do hereby certify:

6                  That I reported on the Stenograph machine

7       the proceedings held in open court on May 12, 2008, in the

8       matter of UNITED STATES OF AMERICA vs. ANTHONY W. KENNEDY,

9       Case No. 3:07-CR-00159-3; that said excerpt of proceedings in

10      connection with the hearing were reduced to typewritten form

11      by me; and that the foregoing transcript (Pages 1 through 56)

12      is a true and accurate record of said excerpt of proceedings.

13                  This the 9th day of September 2009.

14

15

16

17

18

19                         /s/ Dorothy Stiles, RMR, CRR

20                              Official Court Reporter

21

22

23

24

25