United States District Court
Middle District of Tennessee

RECEIVED
IN CLERK'S OFFICE
AUG 11 2016
U.S. DISTRICT COURT
MID. DIST. TENN.

United States of America, )
)
v. ) Case No: 3:07-cr-00159-1
)
)
James C. McWhorter )

## Motion to Transfer Supervised Release

James McWhorter submits this Court retains the authority over the terms and conditions of his Supervised Release. Mr. McWhorter is currently Supervised by USPO James Foster.

Almost two-months ago, Mr. McWhorter requested that Mr. Foster initiate the process to transfer his Supervised Release to the Northern District of Indiana, South Bend Division. Mr. Foster has neither responded nor initiated the transfer request.

In Mr. McWhorter's experience, such requests take at least 30-days — sometimes longer — to be processed. The US Probation Department in the District of Transfer

must verify the release residence, community ties, etc., and that simply takes time.
Assuming the BOP takes the maximum good-conduct time for the Disciplinary Infraction Mr. McWhorter is sure to have for failure to return to the federal halfway house, Mr. McWhorter would be eligible for release in October 2016 — less than 60-days away.

Mr. McWhorter, apparently, has a strained relationship — at best — with Mr. Foster. With nothing more than his imagination to guide him, Mr. Foster created a story that Mr. McWhorter had his girlfriend, Jodi Johnson, incorporate a business to "aid" in Mr. McWhorter's "escape" from the federal halfway house.
These imaginative allegations caused authorities in South Bend, Indiana to charge Mr. McWhorter with a felony offense when the US Marshal's arrested him on May 27, 2016. On August 4, 2016 the State of Indiana conceded that, despite months of diligent investigation, they could find nothing to support those "facts." The case was dismissed.

Of course, anyone with a passable knowledge of the halfway house would know if someone wanted to "escape," they only have to walk away, or ask for a haircut pass, hygiene pass, job search pass, banking pass, church pass, or shopping pass and just not return. Or, if someone is truly intent on "escaping," they just do not have to show up to the halfway house to begin with, after being released from prison.

It is incredulous to believe someone would incorporate a business, lease an office in the Fifth/Third Building — one of the most expensive office buildings in downtown Nashville — pay Subsistance for several months, set up websites, perform paralegal work for several attorneys, line-up work with others, volunteer their time at the Legal Aid Society, advertise on the internet (and through direct mailings) soley to aid in an escape from a facility they could just walk away from.

And, more importantly, if Mr. McWhorter were intent on returning to criminal activities, there would be some proof of them. Mr. McWhorter's record demonstrates

that the types of criminal activity he is versed in creates paper trails. And no such trails exist.

On the morning of September 7, 2015, someone attempted to murder Mr. McWhorter. A vehicle, with at least two occupants, opened fire on Mr. McWhorter and his best-friend, Eugene Nesbitt, whom was in town visiting Mr. McWhorter over the holiday weekend. Mr. Nesbitt visited Mr. McWhorter at the halfway house the day before.

In a panicked state-of-mind, Mr. McWhorter was faced with the Hobsons choice of returning to the halfway house, where someone could be waiting to finish the job, or call the police, who would absolutely take him in to custody for "safe keeping" — Mr. McWhorter, not 30-days prior, witnessed the Marshal's place someone in Bowling Green, KY for much the same reason from the halfway house.

Mr. McWhorter fled. But, the violence followed him. Less than three-weeks later, Mr. Nesbitt was shot four times in the head at a place where Mr. McWhorter — not Mr. Nesbitt — was supposed to be. Mr. Nesbitt died instantly.

And these facts are well-documented. A simple Google search would reveal most of them.

Mr. McWhorter does not now — with the clarity of hindsight and passage of time — believe he made the right choice. But, he was not thinking with a straight mind, and acted on impulse after having bullets fly past him. Mr. McWhorter truly believes that once these individuals learn where he is at, they will try again. <u>See Statement of Reasons</u>.

But, because Mr. McWhorter committed crimes close to a decade ago, everyone's initial reactions are that he is simply a criminal with Grisham-like plots that he's spinning to manipulate every part of the system.

Ms. Johnson did not own the company he worked for. Though she <u>did</u> work there, and was the contact for the halfway house (only because she was already familiar with Mr. McWhorter's past). Mr. McWhorter never hid that fact from the halfway house. That file will clearly show he intended on living with Ms. Johnson (then Kaczorowski, her divorce became final in July 15)

and that Ms. Johnson was the halfway houses contact at work. Quite often, people being released from prison rely on their existing relationships to obtain employment. One gentleman at the halfway house worked for his daughter. There's nothing neferious about such situations, and if Mr. McWhorter was attempting to "get over" in some manner, he certainly would not have told the halfway house he intended to live with Ms. Johnson, who was moving from Indiana to live with Mr. McWhorter. Each Progress Report Mr. McWhorter signed mentioned the situation.

    Yet Mr. Foster spun webs of conspiracies, where nothing existed. So, it is quite likely he is not going to initiate the transfer request. Thus, Mr. McWhorter seeks this Courts intervention.

    Mr. McWhorter intends to marry Ms. Johnson upon release. She has never had so much as a speeding ticket in her life, and is a licensed insurance agent — which have requirements almost as strict as practicing law. She does Risk Management, and consults with attorneys in insurance litigation. Though recently, she has had some medical issues.

This Court could not create a better person for Mr. McWhorter to live with and influence his life.

In Indiana, Mr. McWhorter has a residence, friends, family, job prospects, his doctor (which is awaiting his release to begin treatment on a life-threatening condition Mr. McWhorter has), a vehicle, the jiu jitsu gym he trains at. His entire life is now in Indiana. See Declaration, filed contemporaneously with this Motion.

In Tennessee, he's homeless with no support system and people intent on murdering him.

Mr. McWhorter, therefore, would respectfully ask this Court to transfer his Supervised Release to the Northern District of Indiana, South Bend Division.

Dated: August 11, 2016

Respectfully Submitted,

James McWhorter

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the (pleading) Motion to Transfer Supervised Release and supporting Declaration has been served on:

(Name) Jimmie C. Ramsaur
(Address) 110 Ninth Ave. South, Suit A961
(Address) Nashville, TN 37203

(Name) _____
(Address) _____
(Address) _____

(Name) _____
(Address) _____
(Address) _____

(Name) _____
(Address) _____
(Address) _____

(Name) _____
(Address) _____
(Address) _____

(Name) _____
(Address) _____
(Address) _____

(Name) _____
(Address) _____
(Address) _____

(Name) _____
(Address) _____
(Address) _____

(Name) _____
(Address) _____
(Address) _____

on the 11th day of August, 2016.

_____
Signature