## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3-07-cr-00159-1 |
| | ) | **Judge Aleta Trauger** |
| | ) | |
| | ) | |
| **James C. McWhorter**, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

### Motion to Terminate Supervised Release

Comes now the Defendant, James C. McWhorter, by and through counsel, and would hereby move this Honorable Court under 18 U.S.C. § 3583(e) to enter an Order terminating the remaining time he has on Supervised Release.

### I.    Background

#### A.  Offense Conduct 3:07-cr-00159-1

When Mr. McWhorter was 27-years old, he was charged, along with eight others, in a multi-count indictment based on his conduct in a scheme to make false identification documents and fake payroll checks and cash them at local businesses. Mr. McWhorter was sentenced to 124-months incarceration and 3-years supervised release.

The original restitution ordered was $114,536.26. The current restitution is around the $80,000.00 range. Mr. McWhorter has paid 10% of his gross pay since release and paid his tax-refund towards restitution. Mr. McWhorter consistently complied with the FRP program in the Bureau of Prisons.

### B. Offense Conduct 3:16-cr-00162

Mr. McWhorter was at Diersen Charities in Nashville, Tennessee. Mr. McWhorter left to go to work and never returned. He was arrested approximately 8-months later. He immediately pled to the offense of escape and was sentenced to 8-months in-custody, followed by 3-years Supervised Release. Custodial time to be served consecutive to the original sentence and Supervised Release to be served concurrent.

Mr. McWhorter was released from custody July 21, 2017.

### II. Termination Request

### A. Rehabilitation and Current Circumstances

Mr. McWhorter has been on Supervised Release for 1 year. In March of this year Mr. McWhorter got married; has two minor children in his home much of the week[1]; has maintained steady employment since *the day* he was released from custody and has received a promotion during that time[2]; overpaid his restitution for the year[3]; under supervision of his employer, volunteers his time to assist individuals returning from prison with minor legal matters; has an exceptionally stable home life; been accepted to

---

[1] The two children are from Mr. McWhorter's wife's prior marriage; custody is shared between Mrs. McWhorter and her ex-husband, with Mrs. McWhorter having approximately 65% custody.

[2] Mr. McWhorter was originally hired as a paralegal, with a salary of $2,000.00 per month. After being enrolled in law school he was promoted to a Student Law Clerk position and received a raise to $5,000.00 per month.

[3] Mr. McWhorter was Ordered to pay 10% of his gross income in restitution, for the preceding 12-months, Mr. McWhorter has paid approximately $1,500.00 more than his 10% gross.

*Motion to Terminate Supervised Release*

and currently enrolled in law school[4] timely submitted all monthly written reports, has had no new arrests, and passed all random drug screens. Mr. McWhorter has attended all AA/NA classes, as ordered in the original Judgment. Shortly after release, Mr. McWhorter was assessed by the Evelyn Frye Center, at the behest of USPO James Foster, wherein Mr. McWhorter was opined to be mentally stable and no longer having any controlled substance abuse concerns.

The only issue Mr. McWhorter has had since being released was whether he was holding himself out to be an attorney. This Court entered an Order in that regard. (Doc. 35). However, that was not Mr. McWhorter's doing. *See Exhibit B*. (Letter from Scorpion Design). Mr. McWhorter has never held himself out to any member of the public as an attorney.

Mr. McWhorter has a very stable life. He is, in his words, "domesticated." Health wise, Mr. McWhorter was able to obtain treatment after being released. He has full coverage insurance through his employment. Often people, especially overweight individuals, with untreated Hepatitis-C have Non-alcoholic fatty liver disease (NAFLD) develop because of the Hepatitis-C, particularly in HCV genotype 3 – which Mr. McWhorter has.

---

[4] Mr. McWhorter currently works for a firm that practices mainly federal criminal law and they are in the process of expanding their firm to the State of California. Due to financial issues, Mr. McWhorter's only option in Nashville was Nashville School of Law. However, NSL is not ABA approved and Tennessee does not have reciprocity with the State of California. Thus, if Mr. McWhorter attended NSL he would have to practice an additional 4-years before he could apply in California. However, by attending law school in California, he can be licensed 4-years sooner, and make *pro hac vice* requests for Tennessee courts until he has practiced for 5-years, when he can seek admission in Tennessee.

Therefore, with the assistance of his employer, Mr. McWhorter decided on American Institution of Law. He is currently enrolled and in good standing, passing all classes with flying colors – grades at this point are unofficial, but Mr. McWhorter has not received anything less than 100% on any assignment up to this point. *See Collective Exhibit* A (Law School Documents)

The Hep-C, however, has been cured. Mr. McWhorter now is "non-reactive." He is actively seeking treatment for the NAFLD and while the swelling of the liver is still present, the Hep-C is no longer doing damage.

## B. Constraints Due to Supervised Release

There are three significant constraints that Mr. McWhorter has due to Supervised Release, which hinder his rehabilitation and employment.

### i. Rehabilitation Constraints

The Court is aware of Mr. McWhorter's past history. His employer has obtained the services of an attorney that specializes in bar admission in California. Bar Counsel advised Mr. McWhorter that he must be off Supervised Release for a period of three years and crime free for a period of five years. Since Mr. McWhorter has remained drug free for such a significant period and the majority of his offenses have been centered around drug use, if Mr. McWhorter meets those criteria, upon passing the bar examination it is highly likely he will be admitted to practice in the State of California.

Mr. McWhorter currently has three years and seven months remaining in law school. While he can apply for his moral fitness examination at any point, Bar Counsel has recommended he apply towards the end of his Fourth year. The process takes approximately six months. But with Mr. McWhorter's history, it is more likely to take up to a year.

The thought process behind waiting to apply is that Mr. McWhorter is eligible to sit for the bar prior to the moral fitness examination, but cannot be licensed prior to that point. From an optics perspective, it is likely to look better to the bar association if Mr. McWhorter has already passed the bar exam.

If this early termination request is denied, Mr. McWhorter will not have the necessary three complete years off Supervised Release prior to applying for admission, and will have to delay requesting admission until that time is satisfied. Mr. McWhorter can easily demonstrate by clear and convincing evidence that he is not the person he was before and that he lives a life any law-abiding citizen would approve of. There is little penological reason to hamper Mr. McWhorter's ability to apply to the Bar on time when he graduates.

### ii.  Employment Constraints

Mr. McWhorter frequently travels for employment, which has not been an issue with his Supervised Release for cases and clients that are in the United States. To date, USPO Foster has never denied a travel permit for Mr. McWhorter to attend any work function within the country, which involves several monthly trips out-of-state.

Tennyson & Wiggington has an asset protection division of their firm. Mr. McWhorter has proven himself to be very adept in the assistance he can provide his employer in this area of practice. To properly represent and counsel these particular clients, Counsel has to leave the country. USPO Foster flatly denied Mr. McWhorter any

*Motion to Terminate Supervised Release*

travel outside of the country.[5] Currently, the firm has clients with business interests in Iran, Canada, Nevis, Bahamas, and Italy.

Mr. McWhorter would earn significantly more income if he were able to accompany Mr. Tennyson for these client functions. This would allow him to pay off his restitution sooner.

### iii.    Family Relationships

Mr. McWhorter has two adult-aged children who live in Jackson, Tennessee. Mr. McWhorter must seek permission to be able to visit with them because they live outside the Middle District of Tennessee. USPO Foster has been very generous with any request Mr. McWhorter has made to see his children, but Mr. McWhorter still must ask a day or two in advance – even for day trips. That substantially limits his interactions with his children.

Mr. McWhorter routinely works 80 hours a week and the time he can see his children sometimes makes itself available at the last minute. When time does become available at the last minute, it cannot be used to see his children.

Again, USPO Foster has approved each request that has been made. But, the time it takes to request the travel does not always exist. Mr. McWhorter's eldest daughter has special needs and her driving to Smyrna to see him is not an option. His youngest biological daughter does not have a license or vehicle to travel.

---

[5] In October 2017 Mr. McWhorter requested to be able to accompany John Tennyson to the Isle of Nevis, at Mr. Tennyson's request.

### C. Restitution

While a factor to be considered, the restitution Mr. McWhorter still owes should not *ipso facto* determine the outcome of this request.

The Eastern District of Tennessee, Hon. Thomas W. Phillips, considered a very similar situation as before this Court. *See United States v. Whitehouse,* 2016 WL3951146 (E.D. Tenn. July 20, 2016). Whitehouse still owed $16,828,122.55 in restitution at the time he moved for termination. *Id.* at *1. The district court noted that under the Guide to Judiciary Policy, "the existence of an outstanding financial penalty per se does not adversely affect early termination as long as the offender has been paying in accordance with the payment plan." *Id.*

McWhorter, like Whitehouse, has paid on time, and does not have any other issues effecting his request for termination. McWhorter, also like Whitehouse, cannot pay the remaining restitution off fully in the next three years, whether or not he remains on supervision. While McWhorter has not reached the "presumptive" stage of early termination[6], McWhorter presents no identifiable risk to the public or victims, is free from any moderate or high severity violations – free from any type of violation – and has demonstrated exceptionally good behavior during the period he has been on Supervised Release.

It is in the interests of justice that McWhorter be allowed to have a normal relationship with his children, where he can see them at any time that becomes available to him, to work to his full potential, and seek admission to the Bar upon graduation from

---

[6] The Guide to Judiciary Policy advises there is a "presumption in favor of recommending early termination for supervised releasees who have been under supervision for at least 18 months …" *Whitehouse*, *1

*Motion to Terminate Supervised Release*

law school. McWhorter has established a career, enrolled in graduate level studies to further that career, formed a family unit that supports and cares for him, and brought extremely stability to his life. McWhorter has worked exceptionally hard towards these goals, continues to work hard, and has exhibited extraordinary behavior, far beyond mere compliance with the conditions.

The terms of Supervised Release do hamper his earning ability and rehabilitation. Thus, termination is appropriate and in the interests of justice.

## III.     Conclusion

Under 18 U.S.C. § 3583(e)(1), an individual sentenced to a term of Supervised Release can move the Court to terminate the Supervised Release early, after serving at least one-year of the term. McWhorter was sentenced to a term of three-years and has currently served over 12 months of that term. He would respectfully request this Honorable Court enter an Order terminating his Supervised Release.

Dated: August 6, 2018.

Respectfully Submitted,

John Tennyson (BPR# 32777)
611 Commerce Street
Suite 2609
Nashville, Tennessee 37203
615-506-3108
jtennyson@nashville-law.com

_____/s/ John Tennyson_____
**John Tennyson**

## Certificate of Service

I, John Tennyson, do hereby certify that I have forwarded a true and correct copy of the foregoing pleading via CM/ECF to the United States Attorney's Office for the Middle District of Tennessee:

S. Carren Daughtry
*Assistant United States Attorney*
110 9th Ave S
# A961
Nashville, TN 37203

On this 6th day of August 2018.

/s/ John Tennyson
**John Tennyson**