UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | |
| v. | ) | No. 3:07-cr-00159-1; 3:16-cr-00162 |
| | ) | **JUDGE TRAUGER** |
| **James C. McWhorter,** | ) | |
| *Defendant.* | ) | |

**Defendant's Reply to United States' Response
In Opposition to Defendant's Motion to Terminate Supervised Release**

Comes now the Defendant, James C. McWhorter, by and through undersigned counsel, and hereby responds to the Government's Motion in Opposition.

McWhorter only responds to the facts appropriate to the issues raised.

a. **Change in Employment**

McWhorter recently changed employment from Tennyson & Wiggington, PLLC to Armistead Law Group, PLLC. This was a sound career move, supported by his previous employers, that will significantly increase McWhorter's currently monthly salary. Cathryn Armistead, McWhorter's current direct supervisor, like Tennyson & Wiggington, handles asset protection, among other practice areas. Asset protection work can require out of country travel. While there are not current specific issues, like there would have been at Tennyson & Wiggington, the same issues will arise.

1

Prior to changing positions, McWhorter timely notified the USPO, gave notice to Tennyson & Wiggington, PLLC, and still assists Tennyson & Wiggington in the transition of the cases McWhorter was working on – some of the clients are Spanish speakers, and McWhorter is the only Spanish-speaking member of either team. There is no "bad-blood" between McWhorter and Tennyson & Wiggington, as evidence by counsel's continued representation of McWhorter for this petition.[1]

### b. McWhorter's special needs daughter moving in

McWhorter's special needs daughter is moving in with him. This evidences even more clearly McWhorter's change, and exceptional rehabilitation and acceptance of a variety of responsibilities that he is capably handling. However, the issue still is present with McWhorter's other daughter, who will remain living in Jackson for the time being. He will not be able to visit with her, or take his special needs daughter to see her sister, whenever he gets free time.

### c. California Admissions

McWhorter will not "benefit" from remaining on supervised release for three years with no further problems, it will hinder him. The California Bar Association – like any Bar association, including Tennessee – does not want to see how an individual will act

---

[1] At the time of the filing of the original pleading on August 6, 2018, McWhorter had not been offered the position he ultimately accepted with Armistead Law Group, PLLC.

while they are being supervised, they want to see how an individual will act while not being supervised, *i.e.* continue paying restitution (if appropriate), continue sound financial responsibility, continue working, handle the pressures of family, school, and work, etc.

Should the Court deem it appropriate to delay McWhorter's attempt at admission, that is something no one can change. McWhorter is highly aware this is a discretionary function. But, having the track record unsupervised is what McWhorter needs and what will benefit him and lead to his ultimate rehabilitation.

### d. McWhorter is "merely complying" with his conditions

Counsel takes some exception with this allegation. If McWhorter were working at a car wash, making minimum wage, he would be "mere complying" with the basic conditions of his release. Counsel spends a considerable amount of time in federal courts and sees "mere compliance" each and every day, as does this Court. McWhorter has gotten married, taken on the responsibilities of a family – while working 60-80 hours a week without fail – maintained sound financial responsibility, gained the respect of other attorneys – who ultimately extended exceptional employment opportunities (even with his history) – volunteered his time to assist other inmates reentering society and reduce recidivism, maintained a completely drug-free lifestyle, enrolled in law school – maintaining graduate-level courses while handing all his other responsibilities. Each and

every day McWhorter maintains an applaudable level of responsibility, without the slightest hesitation.

McWhorter's conduct has been *exceptional* since he has been released from custody. That is the "changed circumstances" courts are to look for. *See United States v. Atkin*, 38 F.Appx 196, 198 (6th Cir. 2002).

The Government makes much over McWhorter's history. History simply is what occurred in the past, it cannot change. The Government appears to argue that since McWhorter's history has not changed, he should not qualify for early termination. (Doc. 713, p 7). That history will never change. Under the Government's theory the Court should only look to an individual's history and no further. Looking from the sentencing hearing forward, not a single one of the Government's arguments pass muster.

Few people have made so many changes in their life and so many substantial steps towards rehabilitation as McWhorter has since his release.

If McWhorter – or anyone on Supervised Release – wants to commit a crime, Supervised Release will not deter them. McWhorter does not want to be on the outer-edges of society, he has shown himself a productive member of society. He wishes to do exactly what he is doing now.

Supervised Release does not "protect the public from further crimes of the defendant" here; it does not deter any criminal conduct; Supervised Release is not providing any needed education or vocational training, medical care, or other correctional

treatment in the most effective manner; Supervised Release does not provide restitution to any victims of the offense.

Looking to each of the § 3553(a) factors that would relate directly to continued Supervision, none of them apply to McWhorter's situation. Again, if McWhorter – or anyone on Supervised Release – wanted to commit a crime, he simply could. He makes the *choice* not to. And he makes that choice because he is a changed person. Having McWhorter send in a paper once a month and make travel requests when work requires does not significantly alter the situation.

The *only* significant issues Supervised Release reaches in this case are that a) McWhorter will have to wait additional time after graduating from law school to apply for admission to the California Bar; b) will not be able to travel outside of the country for any work activities; and c) McWhorter cannot socialize with both his daughters on a spontaneous basis, but must receive permission days in advance and make planned trips.

McWhorter has made substantial rehabilitative steps and has performed exceptionally well on Supervised Release. Early termination on continues the goals he has already set in place and moving forward with. Denying early termination does, in fact, hinder his ultimate rehabilitation.

McWhorter would move for termination.

Dated: August 31, 2018

Respectfully Submitted,

John Tennyson (BPR# 32777)
*Attorney for James McWhorter*
611 Commerce Street, Suite 2609
Nashville, Tennessee 37203
615-506-3108
jtennyson@nashville-law.com


_____/s/ John Tennyson_____
**John Tennyson**


**Certificate of Service**

I, John Tennyson, do hereby certify that I have caused true and exact copies of the foregoing pleading to be served on AUSA Carren Daughtery by utilizing this Court's CM/ECF system on this 31st day of August, 2018.


_____/s/ John Tennyson____
**John Tennyson**